(Nos. 4353-4354-4397-4398-)

GENE DOOLITTLE BY LORENA PETERSON, HIS MOTHER AND NEXT FRIEND, No. 4353, WILLIAM OTT, No. 4354, JOYCE PROKOP, A MINOR, BY JOHN A. PROKOP, HER FATHER AND NEXT FRIEND, No. 4397, AND SHIRLEY PROKOP, No. 4398, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 7, 1951.*
*Petition of Claimants for rehearing denied November 13, 1951,*
*Judge Delaney dissenting.*

JOHN IRVING PEARCE, Attorney for Claimants.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

LANSDEN, J.

Having arisen out of the same accident, the four cases now before us for consideration were consolidated for hearing and opinion. All claimants seek to recover for the alleged negligence of respondent.

Case No. 4353 was filed by Gene Doolittle, driver of the automobile, for reimbursement for doctor and hospital bills, and also for personal injuries sustained in said accident.

Case No. 4354 was filed by William Ott to recover for damages sustained in said accident to his 1940 Chevrolet coupe.

Case No. 4397 was filed by Joyce Prokop, a minor, by her father and next friend, to recover for personal injuries sustained in said accident.

Case No. 4395 was filed by Shirley Prokop, now Shirley Simonelic, for personal injuries sustained in said accident.

On Sunday, September 3, 1950, the claimant, Gene Doolittle, used, with his permission, a car belonging to his grandfather, claimant, William Ott. Accompanied by Shirley, Joyce, Joan and Audrey Prokop, he drove from Wilmington, Illinois to a drive-in theatre located near Kankakee, Illinois. At approximately 10:00 P.M. that night they left the drive-in theatre in Kankakee, and drove toward their home in Wilmington, Illinois, on Illinois Highway No. 113 North, which highway extends in a northwesterly and southeasterly direction between Wilmington and Kankakee, Illinois. Said highway, No. 113 North, was originally constructed as a 9 foot paved highway, but in 1944 that part of the highway between Kankakee and a point 300 feet northwesterly of what is locally known as Chicago Road was widened to 20 feet, and that part from 300 feet northwesterly of the Chicago Road to Wilmington continued as a 9 foot pavement, with 4 to 6 foot shoulders on each side of the highway. The point northwesterly from Chicago Road is on a curve to the left when traveling toward Wilmington, and immediately southeast of the Chicago Road intersection on the north shoulder of Route No. 113 North is a diamond shaped 24 inch x 24 inch sign with an arrow indicating a curve to the left.

Prior to September 3, 1950, the shoulders of said highway from the end of the two lane pavement to Wilmington were in the process of a maintenance operation to prepare them for black topping, and the shoulders were bladed in preparation for said black topping. The blading operation was done with one end

of the scraper blade resting on the edge of the concrete slab.

As the claimants drove in a northwesterly direction along said highway, and as they rounded the curve at a point where the four-lane pavement merged into the single lane pavement, the driver of the car, Gene Doolittle, lost control of same, and the car went through a fence, and overturned in the field with the consequent injuries to the passengers. The car left the highway at a point approximately 100 feet beyond the end of the two-lane pavement, and came to rest in a field about 30 feet from the highway. Claimants, Gene Doolittle, Joyce Prokop and Shirley Prokop received injuries in the accident. At the hearing there was evidence as to the personal injuries sustained by each claimant, the amount of their bills, and loss of earnings during the period. Also evidence was introduced as to the value of the car in behalf of the claimant, William Ott.

There was also considerable evidence as to the condition of the road at the point in question, and the undisputed failure of the State to erect and maintain necessary signs warning of the change in pavement, and the construction in progress. The evidence on behalf of the claimants as to the condition of the road was very meager and indefinite, and their contentions are not borne out by the photographs taken the day after the accident, and introduced in evidence, to-wit: claimant's exhibits Nos. 1, 2, 5 and 8. These pictures, in the opinion of the Court, show the shoulders of the road to be in fairly good condition. In fact, the photographs rebut almost entirely claimants' contention that the shoulders were soft and covered with loose dirt and gravel, for tire tracks visible in the photographs disclose no ruts, but merely surface imprints; and the

material on the shoulders, except for some loose stones, is obviously firmly compacted.

The evidence for respondent on the other hand as to the road condition is more definite, and entitled to more weight. James L. Calhoon, maintenance field engineer from the Elgin office, testified that the shoulders at the point in question were in better than average condition, because of the concentrated effort that was being made to smooth them in preparation for the asphalt treatment. John M. Glenny, highway section man, in charge of the specific portion of the highway in question, likewise testified that the shoulders were in good condition; that they were approximately flush with the edge of the pavement, and that all the loose material was removed from the shoulders each day. We conclude that the preponderance of the evidence shows no negligence on the part of respondent.

Although the occupants of the car, other than Doolittle, testified they were either asleep or drowsy, and did not pay much attention to what was going on, Doolittle, who at the time of the accident was driving 40 miles per hour, testified that he was acquainted with the road, and had traveled over it the night in question on the way to the theatre. He had only been driving a car by himself for the period of several weeks, and his inexperience was in a large part the cause of the wreck.

One who has earlier the same evening driven over a certain stretch of highway is charged with a knowledge of its condition so long as the condition is unchanged on his return trip. *Mounce* vs. *State*, No. 4317, opinion filed April 10, 1951. In that case we held also that to approach a place of known danger without care commensurate with such danger is contributory negligence.

We feel that the holding in the *Mounce* case is applicable in these cases.

In view of the foregoing, awards to all claimants must be denied.

Awards denied.